IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00388-RBJ

PAMELA M. ALFONSO,

      Plaintiff,

v.

PUEBLO SCHOOL DISTRICT NO. 60,

      Defendant,

---

## ORDER

---

This matter is before the Court on defendant's motion for summary judgment [ECF No. 18]. For the reasons described below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Pamela Alfonso is an employee of defendant Pueblo School District No. 60 (the District). ECF No. 18 at 2. Alfonso was born on November 8, 1964 and was over 40 years old during all relevant times. ECF No. 19 at ¶ 1. She is of Hispanic national origin. *Id.* at ¶ 2.

Alfonso began working for the District in 1989, and she has taught vocal and instrumental music at various District schools. *Id.* at ¶ 3. From August 2007 to May 2012 Alfonso was a vocal music teacher at Hellbeck Elementary School (Hellbeck). ECF No. 18 at 3. In January 2012 the District closed Hellbeck because of a decline in enrollment. *Id.* at 3–4. The closure eliminated Alfonso's teaching position, rendering her a "displaced teacher." *Id.* at 4.

As a displaced teacher, the District placed Alfonso in a priority hiring pool. *Id.* When a displaced teacher applies for an open position in the District, she is given a "mutual consent"

interview before the consideration of non-priority candidates.[1]  *Id.*  The school's principal and hiring committee conduct the mutual consent interview.  *Id.*  If a displaced teacher cannot secure a job through the mutual consent process, a school district can either administratively place her in a job for one year or give her one year of paid leave.  *Id.* at 2.  At the end of that year, if the teacher still has not found a mutual consent position, she must take unpaid leave but remains on the priority list for open positions.  *Id.*

In May and June 2012 Alfonso had mutual consent interviews for vocal music teaching jobs at four schools in the District.  ECF No. 19 at ¶ 7.  None of these hiring committees offered Alfonso a job.  *Id.*  As a result, the District administratively placed Alfonso in a music teaching position at Roncalli Science Technology Engineering and Math Academy (Roncalli) for the 2012–2013 school year.  *Id.* at ¶ 8.  The District informed Alfonso that if she did not secure a mutual consent position within 12 months, she would need to take an unpaid leave of absence. *Id.*

Beginning in May 2013 Alfonso interviewed at the following eight schools for jobs during the 2013–2014 school year: (1) Fountain International Magnet School (Fountain International); (2) Beulah Heights Elementary School (Beulah); (3) Morton Elementary School (Morton); (4) Pitts Middle School (Pitts); (5) Minnequa Elementary School (Minnequa); (6) Columbian Elementary School (Columbian); (7) Centennial High School (Centennial); and (8) Somerlid/Heroes K-8 Academy (Heroes).  She did not receive a job at any one of these schools. *See* ECF No. 19 at ¶¶ 9–37.  After a year of unpaid leave, the District's Bradford Elementary

---

[1] In 2012 the Colorado General Assembly passed a bill (commonly referred to as "SB-191"), which changed the evaluation of teachers and principals.  As a result, school districts can no longer administratively place a displaced teacher in an open position.  Now, there must be "mutual consent" whereby displaced teachers can apply for an open position, and the school's principal can consent to the hiring of the teacher after the interview process.  ECF No. 18 at 2.

School (Bradford) hired Alfonso through the mutual consent process in August 2014.  *Id.* at ¶ 40.

She remains a teacher at Bradford.  *Id.*

As a result of her lost income during the 2013–2014 school year, Alfonso asserts two

claims: (1) age discrimination in violation of the Age Discrimination in Employment Act of

1967, 29 U.S.C. § 621 *et seq.* (ADEA) and (2) national origin discrimination in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII).  *See* ECF No. 1.

## ANALYSIS

### I.     Standard of Review.

The Court may grant summary judgment if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler*

*v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (internal quotations and citations

omitted).  A material fact is genuine if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving

party must "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.

### II.    Plaintiff's Failure-to-Hire Claims.

Plaintiff claims that the District discriminated against her on the basis of age and/or

national origin when it did not hire her for the eight positions she applied for during the 2013–

2014 school year.  ECF No. 19 at 1.  Despite alleging age discrimination at all eight schools in

her Complaint, plaintiff has since clarified that she is not alleging age discrimination at

Minnequa or Centennial.  ECF No. 18-11 at 2–3.  She alleges national origin discrimination at all eight schools.  ECF No. 1 at ¶ 40.

Where the plaintiff relies on circumstantial evidence of discrimination, as Alfonso does, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995) (internal citations omitted) (this scheme is the "indirect method of proof developed in Title VII cases," but the Tenth Circuit also applies it for ADEA cases).  Under the *McDonnell Douglas* analysis, the plaintiff must first prove a prima facie case of discriminatory failure to hire.  *Id.*  The plaintiff must show that "(1) [she] belongs to a protected class; (2) [she] applied and was qualified for a job for which the employer was seeking applicants; (3) [she] was rejected for that job; and (4) following [her] rejection, the job remained open and defendant continued to seek applicants from persons with plaintiff's qualifications."  *Gonzales v. Comcast of Colorado IX, LLC*, 2010 WL 4156521, at *2 (D. Colo. 2010) (internal citations omitted).  If the plaintiff satisfies the prima facie test, the employer must "produce a legitimate, non-discriminatory reason for the adverse employment action."  *Jones*, 54 F.3d at 630.  If the employer does so, the burden shifts back to the plaintiff "to show that there is a genuine dispute of material fact as to whether [defendant's] proffered reason for the challenged action is pretextual—i.e., unworthy of belief."  *Eke v. CaridianBCT, Inc.*, 490 Fed.Appx. 156, 160, 2012 WL 3089714, at *3 (10th Cir. 2012) (internal citation omitted).

The Tenth Circuit has recognized that "[p]retext can be shown in a variety of ways, and there is no one specific mode of evidence required to establish the discriminatory inference."  *Conroy v. Vilsack*, 707 F.3d 1163, 1172 (10th Cir. 2013) (internal quotations and citation omitted).  An employee generally establishes pretext "by showing the defendant's proffered non-

discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038–39 (10th Cir. 2011) (internal quotations and citation omitted) (alteration in original).  "The employer is entitled to summary judgment if the employee could not offer evidence tending to show the defendant's innocent explanation for [its] employment decision was false." *Trujillo v. Univ. of Colorado Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) (internal quotations and citation omitted).  Courts do not ask "whether the employer's proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Kaiser v. Colorado Department of Corrections*, 504 Fed.Appx. 739, 740, 2012 WL 6032265, at *1 (10th Cir. 2012) (internal citation omitted) (alteration in original).  "The reason for this rule is plain: [the Court's] role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Id.*  (internal citation omitted).

### A.  Age Discrimination.

Under the ADEA, a plaintiff must prove that her age was a "determinative factor" in the employer's action toward her.  *E.E.O.C. v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988). "Age need not be the *sole* reason for the employer's acts, but plaintiff must show that age 'made a difference' in the employer's decision." *Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir. 1984) (emphasis in original).  The ADEA seeks to protect employees "who are at least 40 years of age."  29 U.S.C. § 621(a).  The statute "was passed 'to promote employment of older persons based on their ability rather than age' and 'to prohibit arbitrary age discrimination in

employment.'"   *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1276 (10th Cir. 2005)

(quoting 29 U.S.C. § 621(b)).

### 1.   Prima Facie Case.

The District concedes that Alfonso establishes a prima facie case for age discrimination

at all six schools.  ECF No. 18 at 8.  Therefore, the Court need not analyze Alfonso's prima facie

evidence.  *See, e.g.*, *Kerr v. Valdez*, 55 Fed.Appx. 491, 495 (10th Cir. 2002) (unpublished).

However, defendant moves for summary judgment on the grounds that it had legitimate non-

discriminatory reasons for its hiring decisions, and that Alfonso "has no evidence" that these

proffered explanations "were pre-textual."  ECF No. 18 at 12–13.

### 2.   Legitimate, Non-Discriminatory Reasons and Pretext.

As discussed in more detail below, defendant's explanations for not hiring Alfonso

include (1) that she did not perform as well in her interviews as the chosen candidates; (2) the

hiring committees had concerns about her answers to interview questions; (3) the other

candidates were a "better fit," and (4) in one instance the school was in the process of

eliminating the open music position.  *See* ECF No. 18 at 8–12.  Alfonso does not dispute that

these explanations satisfy defendant's burden to produce legitimate, non-discriminatory reasons

for why the hiring committees did not select Alfonso.  *See* ECF No. 19 at 14–15.  Therefore, this

Court's analysis focuses on the question of pretext.

Alfonso claims that there are genuine fact disputes regarding the District's proffered

reasons for hiring other candidates, which could lead a reasonable factfinder to conclude that the

District's justifications for its hiring choices are unworthy of belief.  ECF No. 19 at 14–20.  The

Court finds that Alfonso has only put forth sufficient evidence to establish pretext at Morton.

For the other five schools, the Court finds that she fails to offer evidence from which a

reasonable jury could find that the District's explanation for its hiring decisions is pretext.  The Court will address each school in turn.

      a.  <u>Fountain International Magnet School.</u>

Alfonso applied for an open vocal music teaching position in April 2013.  ECF No. 18 at 9.  Defendant explains that Alfonso was not selected "because she did not convey any background, interest or knowledge" about Fountain's International Baccalaureate (IB) curriculum.  *Id.*  The District claims that Alfonso admitted that she did not have the IB experience, but "felt it was the District's job to train her to be qualified." *Id.*  Fountain hired Michael Bechina who is white and was 24 years old at the time.  *Id.*  Defendant explains that Bechina "had excellent references, appeared well-informed, had researched IB programs in preparation for the interview, and was passionate about working with grades K-3." *Id.*

Alfonso argues that the District's reasons for not hiring her for the vocal music position at Fountain "are weak."  ECF No. 19 at 16.  The Court finds that Alfonso fails to come forward with evidence from which a reasonable jury could conclude that the District's legitimate, non-discriminatory reasons for not hiring her are unworthy of belief.

First, Alfonso attempts to rebut Principal Eva Bjork's explanation that the committee found Bechina to be better prepared for the interview and more knowledgeable about the IB program by claiming that she *did* convey background about the IB program.  In her affidavit plaintiff states that she "did express an interest" in the IB program and that she "indicated at the interview that [she] would do all that was necessary to become trained and qualified for teaching in an IB school."  Alfonso Affid., ECF No. 19-12 at ¶ 4.  However, without corroborating evidence, Alfonso's perception of her performance in the interview is insufficient to cast substantial doubt on the honesty of the District's explanations.  *Jencks v. Modern Woodmen of*

*Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) (internal citations omitted) ("Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment.  Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment.").  Additionally, the Tenth Circuit has "repeatedly held a nonmovant's conclusory and self-serving affidavit, without other supporting evidence, is insufficient for the purpose of surviving summary judgment." *Martinez v. U.S. Dept. of Energy*, 170 Fed.Appx. 517, 523, 2006 WL 270230, at \*\*4–5 (10th Cir. 2006) (internal citations omitted) (finding plaintiff's assertions in his affidavit that "he performed well in the interview" to be "unpersuasive" on the issue of pretext.).  Additionally, in analyzing pretext, a court examines the facts as they appeared to the decision maker "because it is the employer's perception . . . that is relevant, not [the employee's] subjective evaluation of [her] own relative performance." *Id.* at \*4 (internal quotations and citations omitted).  Finally, even if Alfonso did indeed communicate her knowledge about the IB program, the hiring committee's "mistaken belief" that she did not "can be a legitimate, non-pretextual reason for an employment decision." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (internal citation omitted).

Second, plaintiff argues that she speaks more Spanish than Bechina, which was "something the school was looking for," and that she "had significant[ly] more experience teaching, especially in the area of music."  ECF No. 19 at 16.  Additionally, Alfonso claims that Bechina "also lacked IB knowledge," and that "both [she] and Mr. Bechina required the exact same training."  *Id.*  These allegations about the candidates' respective qualifications are not persuasive evidence of pretext.  It is not the Court's role to evaluate whether the District's hiring of Bechina was a good or bad business decision.  *Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 247 (10th Cir. 1993).  An employer's "erroneous or even illogical business judgment" does not

violate the ADEA.  *Id.*  However, the Tenth Circuit has recognized that "[i]t is conceivable that a

plaintiff in a case such as this could be so overwhelmingly better qualified than another applicant

that on this evidence alone a trial court could properly find pretext and intent to discriminate."

*Id.*; *see also Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (the courts

"are not free to second-guess an employer's business judgment, so plaintiff's assertion that she

was "equally or more qualified" is "insufficient to support a finding of pretext.").

The Court concludes that plaintiff's evidence does not suggest that she was so

overwhelmingly more qualified than Bechina that a reasonable jury could find pretext.  There is

no question that Alfonso had significantly more experience teaching, but the number of years in

a role is but one measure of a candidate's relative strength.  Alfonso is correct to note that

Fountain would have had to train both candidates in the IB program, but the hiring committee

appears to have been more concerned with the candidates' respective levels of preparation for the

interview and familiarity regarding the IB program rather than whether the eventual hire already

possessed the relevant training.  *See* Bjork Depo., ECF No. 19-9 at 13:8–11 ("[w]e just felt like

Mr. Bechina was stronger, took the time to research the school, knew about our population,

researched the IB, and it was very evident when asked the questions.").  Furthermore, regarding

the desire to have a candidate who spoke Spanish, the job posting listed "fluency speaking,

reading, and writing Spanish" as a preferred qualification.  ECF No. 19-8 at 1.  However,

Alfonso testified that she is not fluent, but that "she knew a few words in Spanish that I can be

able to communicate."  Alfonso Depo., ECF No. 19-1 at 12:1–16.

In sum, Alfonso's evidence reflects her disagreement with the hiring committee's

assessment of the relative strengths of the candidates.  Such a difference in opinion does not

generate a material issue of fact as to whether defendant's explanation of its hiring choice is

pretext. In order to establish pretext at the summary judgment stage, "[a] plaintiff must produce evidence that the employer did more than get it wrong." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). Alfonso fails to cast doubt on whether the District did not "really believe its proffered reasons for [its] action and thus must have been pursuing a hidden discriminatory agenda." *Id.*

            b. <u>Beulah Heights Elementary School.</u>

        Plaintiff applied for an open vocal music teaching position at Beulah in May 2013. ECF No. 18 at 9. The District explains that it did not hire Alfonso because the hiring committee was "concerned that [Alfonso] said that she only assessed students at the end of the nine weeks without any earlier assessments which the elementary school preferred." *Id.* Additionally, defendant claims that Alfonso "did not address or appeared to avoid questions on the elements and contents of music." *Id.* The committee also expressed dissatisfaction with Alfonso's preparation for the interview, as she was supposed to provide a "discipline plan as an example of her work," but rather than doing so, she offered a "letter to a substitute [teacher] for one of her prior classes[.]" *Id.* The District hired a white 23-year-old candidate. ECF No. 18-11 at 3.

        Alfonso claims that "[t]here are genuine issues of material facts as to what occurred during [her] interview at Beulah Heights and a rational trier of fact could resolve these issues either way." ECF No. 19 at 16. For the reasons discussed below, the Court finds that Alfonso fails to produce evidence from which a reasonable jury could find pretext.

        First, Alfonso disputes the District's characterization of her answer to the hiring committee's question about assessment. She points to her affidavit to explain that, during her interview, she stated that she assessed students daily, "*including* after every nine (9) weeks because grades had to be turned in every nine (9) weeks." ECF No. 19 at ¶ 16 (emphasis added);

*see* Alfonso Affid., ECF No. 19-12 at ¶ 5.  She asserts that the hiring committee's notes confirm

that she described her assessment system as including formal assessments every nine weeks, the

use of "visuals in her classroom that provided feedback to her students, as well as using teacher

and peer observations, the language and vocabulary they used, and student presentations[.]"

ECF No. 19 at ¶ 16; *see* Committee Notes, ECF No. 19-16.  This evidence does not establish

pretext.  All of the committee members wrote "every nine weeks" in their notes following the

question about how Alfonso "would assess that learning has taken place" in her classroom.  *See*

Committee Notes, ECF No. 19-16, question four.  The notes also include various mentions of

"squad presentations," "peer observation," "teacher observation," "language," "vocabulary,"

"clapping notes/syllable," "performance every 9 weeks," and "art, hands-on."  *Id.*  These notes

are difficult to decipher as they are in short hand and do not provide a complete picture of how

Alfonso framed her response.  Furthermore, the reference to nine weeks is the only note that

relates to the frequency of assessment, and the District's primary concern was that Alfonso did

not assess her students earlier.  Therefore, the hiring committee notes do not indicate that the

District's apprehension about the sufficiency of Alfonso's assessment system is pretext.

  Second, Alfonso disagrees with defendant's claim that she avoided questions about music

during her interview.  ECF No. 19 at ¶ 16.  She claims that the committee notes reflect her

discussion about "content standards, instruments, and dance movement/music."  *Id.*; *see*

Committee Notes, ECF No. 19-16.  Aside from Alfonso's own allegations, the evidence is to the

contrary.  Regarding Alfonso's discussion of music, Principal Tammy Neal testified that "if I

recall correctly, there was a question about music, she talked all about academics; classroom

academics, math and reading, and it almost felt like she just avoided music."  Neal Depo., ECF

No. 19-14 at 14:23–15:2.  When asked if that was the reason why the committee did not choose

Alfonso, Principal Neal responded, "[i]t was one of them, yes." *Id.* at 15:3–5.  Principal Neal also characterized this reason as "probably the biggest," followed by Alfonso's assessment system and discipline plan. *Id.* at 15:6–9.  As with assessment, the relevant hiring committee notes do not suggest pretext.  The second question asked Alfonso about the "elements of music" she believes "are essential for elementary students," and the hiring committee wrote down numerous words and phrases, including "every area," "academics are imp[ortant]," "bringing in all academic areas," "smart goals – dance & movement," "integrated," "social studies, math, vocabulary," and "incorporate all academic areas by using dance music."  Committee Notes, ECF No. 19-16, question two.  From what the Court can garner from the short-hand notes, they align with Principal Neal's concern that Alfonso talked about academics and did not discuss specific elements of music.

Third, regarding her discipline plan, Alfonso clarifies in her affidavit that she "provided a substitute letter to show how substitute teachers viewed [her] classroom when [she] was not there, including how organized [she] was."  Alfonso Affid., ECF No. 19-12 at ¶ 7.  She states that she showed the hiring committee a discipline plan that she sent to parents that describes her "discipline steps" and "elaborated" on this plan's contents in her interview. *Id.*  This does not create a fact dispute about whether defendant's explanation is unworthy of belief.  Alfonso's evidence that she offered the substitute letter to show what someone might observe in her classroom, and that she produced a letter to parents to explain her discipline style is only contained in her affidavit.  Without more, these allegations are insufficient.  Additionally, even if the hiring committee misunderstood Alfonso's purpose for producing the substitute letter, such a mistaken belief is not, on its own, grounds to find pretext.

c.   <u>Pitts Middle School.</u>

In May 2013 Alfonso applied to teach vocal music at Pitts.  ECF No. 18 at 10.  The District claims that the hiring committee did not select Alfonso because it "was concerned about the accuracy of one of her answers regarding a special training program."  *Id.*  Furthermore, the committee had concerns with Alfonso's answer to an interview question about Pitts' mission and vision, claiming that her response consisted of "just generalities and did not provide any details as to how she would employ specific strategies in regards to the school's mission and vision."  *Id.*  The District argues that it hired an individual who provided specific answers to that question.  *Id.*  Defendant hired a white 33-year-old candidate.  ECF No. 18-11 at 3.

Alfonso argues that the District's reasons are pretext because Principal Karen Ortiz's testimony is "inconsistent and contradictory."  ECF No. 19 at 17.  The Court finds that Alfonso's evidence does not create a genuine dispute as to whether the District's explanation is unworthy of belief.

First, Alfonso claims that Principal Ortiz initially "stated that she had no concerns about Ms. Alfonso['s] being chosen for the position at her school."  *Id.*  Alfonso explains that Principal Ortiz only offered a more specific explanation upon questioning from the District's attorney.  *Id.*  Plaintiff's claim that Principal Ortiz changed her answer during her deposition is unconvincing.  Alfonso is correct to note that, early on in the deposition when asked if the hiring committee had any concerns about hiring Alfonso, Principal Ortiz answered "No."  Ortiz Depo., ECF No. 19-20 at 14:25–15:3.  However, plaintiff does not mention that, immediately after this question, Principal Ortiz was asked why Alfonso was not chosen for the position, and she responded "[b]ecause we preferred Ms. Lange."  *Id.* at 15:4–6.  Later, upon questioning from defense

counsel, Principal Ortiz did express her specific concerns regarding plaintiff's interview.  *Id.* at

16:25–17:23.  However, it is understandable that, when defense counsel asked more specific

questions about Alfonso's answers, Principal Ortiz replied with additional details.  The Court

finds that Principal Ortiz's deposition testimony is not contradictory or inconsistent so as to

demonstrate pretext.

Second, regarding the training process, Alfonso maintains that she "did have training in

the Flipping process, something the school planned on training all staff members on."  ECF No.

19 at 17.  Plaintiff further asserts that Principal Ortiz "did nothing to follow up on where she

received that training and merely assumed that Ms. Alfonso was not being accurate."  *Id.* at 17–

18.  Therefore, Alfonso concludes "this alleged reason why [she] was not hired for this position

is a material fact that a rational trier of fact could find to be pretext for discrimination."  *Id.* at 18.

However, the dispute over whether Alfonso had or had not received the Flippen Group training is

not material.  Alfonso believes Principal Ortiz's references to a "Flipping process" [sic] relate to

"Capturing Kids' Hearts," which Alfonso claims to have participated in during the 2012–2013

school year.  ECF No. 19 at ¶ 24; *see* Alfonso Affid., ECF No. 18-12 at ¶ 8.  The hiring

committee notes do reflect that Alfonso mentioned she had completed the Capturing Kids'

Hearts training when asked whether she would foresee a conflict with attending various staff

trainings scheduled over the summer.  *See* Pitts Committee Notes, ECF No. 19-22, question

three.  The hiring committee notes make no mention of the Flippen Group training.  *See id.*

Principal Ortiz recalled that Alfonso said she had received the training, but that Pitts was the

only school to have "employed the Flippen Group to provide training in those processes, which

[the school uses] today and which [the school has] now been implementing throughout the

district."  Ortiz Depo., ECF No. 19-20 at 17:3–10.  Even if Principal Ortiz was wrong, and

Alfonso had received the training, such an honest, but mistaken belief can be a legitimate, non-discriminatory reason.  Plaintiff must offer more than evidence that the employer simply got it wrong.  What matters is that Principal Ortiz drew the conclusion that Alfonso was dishonest about her training history, and plaintiff does not offer evidence that Principal Ortiz's explanation is unworthy of belief, so it is not the Court's role to second-guess the employer's assessment.

Additionally, Principal Ortiz testified that Alfonso's answer to the committee's question about the school's vision and mission lacked specificity.  The applicants arrived early to the interview and were given the vision and mission to read while they waited for their interview.  Ortiz Depo., ECF No. 19-20 at 17: 14–18.  The committee would then ask the candidates to discuss the vision and mission and "how they will contribute to that," and Principal Ortiz remembers Alfonso "specifically just stating that she believed in them, or it was something, like she didn't go into detail as to how she would employ them[.]"  *Id.* at 17:19–23.  Alfonso does not offer evidence to indicate that Principal Ortiz's explanation about this question is unworthy of belief.

Finally, Alfonso claims that the individual hired—Karen Lange—"had less teaching experience than Ms. Alfonso."  ECF No. 19 at ¶ 23.  However, the hiring committee was evaluating each candidate's various strengths and weaknesses, and the disparity in teaching experience does not indicate that Alfonso was overwhelmingly more qualified than Lange.

d. Heroes Academy K-8.

Alfonso applied and interviewed for an open vocal music position at Heroes in August 2013.  ECF No. 18 at ¶ 37.  However, the District claims that it changed the music position to a drama position in September 2013.  ECF No. 18 at 12.  The change was "to better meet their

school's needs." *Id.* Defendant claims that Heroes changed the position again in November 2013 to an art position and subsequently hired someone for that role. *Id.*

Alfonso argues that there is a genuine factual dispute over the timing and nature of the school's changing of the open position. ECF No. 19 at 19. Plaintiff claims that "Defendant did not hire anyone to fill this position; instead, they filled the position with a substitute teacher and later in the school year, approximately January 2014, changed the position to a drama position and began its hiring process." ECF No. 19 at ¶ 37. Alfonso argues that "this is contrary" to the District's explanation in its Motion that Heroes changed the position to a drama position in September 2013 and then to an art position in November 2013, which it filled with an art teacher. *Id.; see* ECF No. 18 at 12.

Regardless of the exact chain of events, the Court finds that plaintiff fails to put forth evidence to establish a genuine dispute of material fact as to why defendant did not hire plaintiff at Heroes. While there may be inconsistencies in the District's explanation regarding the timing and nature of the school's changing of the open music position, such issues are immaterial as to whether the District discriminated against Alfonso on the basis of age or national origin in not hiring her for a fulltime vocal music position. It is undisputed that no later than January 2014 Heroes eliminated the position for which Alfonso applied. She is a music teacher, so she is neither qualified to teach art nor drama. Furthermore, a reasonable juror could not find that the District's hiring of a substitute music teacher in the time leading up to the elimination of the vocal music position is pretext for discriminatory animus. Plaintiff does not allege that the District hired a substitute who was younger than Alfonso or of a different national origin. Additionally, there is no evidence that Alfonso was even interested in the substitute role. Finally, even if she was, it is entirely reasonable, as a matter of business judgment, that the

District opted not to hire a teacher who was looking for a fulltime job for a substitute role when the school was preparing to eliminate the position.

      e.  <u>Columbian Elementary School.</u>

Alfonso applied for a position at Columbian, but the hiring committee "felt that in the mutual consent interview she was unable to completely answer the questions asked to her by the hiring committee." ECF No. 18 at 14–15. When asked in her deposition why the hiring committee did not believe Alfonso was "a good fit for the school," Principal Cynthia Muckel responded that "[t]hrough her interview we could not determine what her skills or knowledge was because of her answers." Muckel Depo., ECF No. 19-27 at 25:20–26:2. Principal Muckel indicated that Alfonso "gave us very long answers, but not specific responses to the questions we were asking." *Id.* at 25:13–15. Regarding Alfonso's experience on her resume, Principal Muckel also indicated that she did not "remember it sticking out in any way." *Id.* at 24:21–25:2. Therefore, the committee concluded that Alfonso did not have "the skills the school was looking for in a music teacher." ECF No. 18 at 15. The committee subsequently hired a white 24-year-old individual. ECF No. 18-11 at 3.

Alfonso claims that the District's proffered reason for not hiring her for the Columbian position is in dispute. ECF No. 19 at ¶ 32. She asserts that "information about [her] skills and knowledge was clearly available by viewing [her] resume and by what [she] indicated during her interview." *Id.* at 18. In support, she submits her affidavit where she explains that she "answered all of the [interview] questions with specificity." Alfonso Affid., ECF No. 19-12 at ¶ 13. Alfonso also states in her affidavit that "the interview committee was very short and brief with me." *Id.* Additionally, Alfonso points to the hiring committee's notes, which she characterizes as demonstrating that she "was specific in answering questions and relayed her

skills and knowledge." ECF Nos. 19 at ¶ 32; 19-30.  Finally, Alfonso argues that the District

hired Christopher Herron despite the fact that he had just obtained his teaching license. ECF No.

19 at ¶ 31.  Alfonso describes Herron as having "very limited skill and knowledge because he

had never held a teaching position before." *Id.* at 19.  She claims that the hiring committee's

"pro/con list" regarding Herron indicates that his "lack of experience was seen as a negative[.]"

*Id.* at ¶ 31; *see* ECF No. 19-29.

The Court finds that plaintiff does not offer sufficient evidence of pretext to survive

summary judgment.  As mentioned above, plaintiff has to offer more evidence than just her own

allegations, so Alfonso's assertions in her affidavit that she performed well in the interviews are

insufficient.  Alfonso cannot establish pretext solely by disagreeing with the hiring committee's

understanding and characterization of her performance in the interview.  While the hiring

committee's notes do indicate that Alfonso answered the interviewers' questions with some level

of specificity, the notes are not clear enough to reflect any weaknesses or inconsistencies in

defendant's proffered explanations.  It is not this Court's role to second-guess the hiring

committee's judgment of how Alfonso answered the interview questions or who was better

suited for the position.  Finally, the fact that Herron had just obtained his teaching license does

not indicate pretext, as years of experience were not the only qualification for which the hiring

committee was looking.

> f.   Morton Elementary School.

Alfonso applied for an open position at Morton in August 2013.  ECF No. 18 at 11.

Defendant claims that the hiring committee did not select Alfonso because most of her teaching

experience was with middle-school students, and Morton is an elementary school. *Id.* at 11.

Additionally, the hiring committee preferred a candidate "with more interest in the elementary

school level and Ms. Alfonso appeared to prefer middle school." *Id.*  The committee offered the position to a white 24-year-old individual.  ECF No. 18-11 at 3.

Plaintiff argues that the District's explanation is pretext because Morton hired a first-year teacher despite expressing a strong preference for someone with experience.  ECF No. 19 at 17.  Alfonso points to Principal Floyd Gallegos' deposition where he stated that someone with elementary school experience was "a must" for the hiring committee.  *Id.* at ¶ 18; Gallegos Depo., ECF No. 19-3 at 13:1–3.  Alfonso emphasizes that the individual selected—Kayla Holderman—had "zero experience" apart from student teaching and did not have her teaching license.  ECF No. 19 at ¶ 19.  Plaintiff concludes that "[t]his shows a clear inconsistency between what Mr. Gallegos alleges and the undisputed facts in this case." *Id.* at 17.

Furthermore, plaintiff claims that "Mr. Gallegos also provided conflicting reasons as to why Ms. Alfonso was not hired for this position." *Id.*  She argues that "Mr. Gallegos' allegation that Ms. Alfonso was not hired because her experience was primarily as a middle school teacher is not plausible[.]" *Id.*  Alfonso explains that she the bulk of her experience had been at the elementary school level, and that she never "stated that she had more interest in middle school than elementary school" or that she ever indicated such a preference.  *Id.* at 17, ¶ 20.  In sum, Alfonso claims that defendant's reasons for not hiring her "are in dispute and create a triable fact." *Id.* at 17

The Court finds that a reasonable jury could find that the District's explanations are pretext.  First, Gallegos' deposition does not clearly support the District's reasoning.  When asked why the hiring committee did not select Alfonso, Gallegos did not provide a specific explanation, but rather stated that "[w]e wanted to see what else was out there.  Available." Gallegos Depo., ECF No. 19-3 at 15:9–14.  He then added that "we were very specific that we

wanted someone with the intent of being elementary." *Id.* at 15:15–18.  However, when asked specifically whether Alfonso indicated in her interview that she did not want to be in an elementary school, Principal Gallegos testified that the hiring committee "didn't believe" that Alfonso lacked an interest in elementary education, but that they "just didn't feel that she was a good fit." *Id.* at 15:19–16:1.  In sum, the record does not indicate that Alfonso expressed or otherwise indicated a preference for a job at a middle school.[2]

Furthermore, Alfonso's employment background contradicts defendant's assertion that most of Alfonso's teaching experience had been at a middle school.  Upon questioning from defense counsel, Principal Gallegos stated in his deposition that "[o]ur concern [with Alfonso] was why would someone want to come to elementary when most of her experience had been previously middle school-related." *Id.* at 16:19–17:1.  However, plaintiff claims that she had 13 years of experience teaching at an elementary school, including five years at Hellbeck Elementary School before the school closed, resulting in her administrative placement at Roncalli Middle School for the 2012–2013 school year.  ECF No. 19 at 17; *see* Alfonso Resume, ECF No. 19-2 at 1–2.  In addition to her one-year placement at Roncalli, Alfonso had worked at one other middle school when she was a teacher at Corwin Middle School from August 1997– June 2007.  ECF No. 19-2 at 1–2.  Defendant argues that Alfonso's "most significant experience" was at Corwin.  ECF No. 22 at 11.  However, while the District is correct that the Corwin position was Alfonso's longest tenure at any one school, her resume confirms her claim that she had worked for more total years at elementary schools than at middle schools.  ECF No. 19-2 at 1–2.  Finally, while the Court recognizes that an argument could be made that student

---

[2] Defendant argues that Alfonso testified that she preferred middle school.  ECF No. 22 at 11 (citing Alfonso Depo., ECF No. 18-2 at 21:6–9).  Alfonso does state that she "enjoyed middle school" when asked if she had a preference between the students at Hellbeck Elementary School and Corwin Middle School.  Alfonso Depo., ECF No. 18-2 at 21:6–9.  However, this testimony has no bearing on whether she indicated a similar preference during her mutual consent interview.

teaching at an elementary school constitutes "elementary experience," defendant's continued focus on the importance of hiring a candidate with elementary school experience does not fully explain its hiring Holderman who had just completed her student teaching at Morton.

In sum, a reasonable jury could infer that the District's shifting and weak explanations for its hiring decision are pretext for discrimination.

### B.  National Origin Discrimination.

Under Title VII, it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Alfonso alleges that the District discriminated against her on the basis of national origin when it did not hire her at all eight schools.  ECF No. 1 at ¶ 40.  Defendant moves for summary judgment because it believes that "it is questionable" whether Alfonso can establish a prima facie case for national origin discrimination, and even if she can, the District "has identified legitimate nondiscriminatory reasons" for why it did not choose Alfonso for the teaching positions.  ECF No. 18 at 14.

### 1.  Prima Facie Case.

Defendant argues that it is unclear if Alfonso can establish a prima face case because she did not self-identify as Hispanic when she filled out the District's federal reporting paperwork in March 2010.  ECF Nos. 18 at 14; 18-14.  Alfonso maintains that she filled out the form incorrectly.  ECF No. 19 at ¶ 4.  The District alleges that it was only after Alfonso had been displaced that she "claim[ed] to be of Hispanic/Latino ethnicity."  ECF No. 18 at 14.  Further, defendant claims that it "had no knowledge of Ms. Alfonso's ethnicity and therefore could not have discriminated against her due to this lack of knowledge."  *Id.*  Plaintiff argues that the

hiring committees never saw the federal reporting document, and moreover that the committees could have known she belonged to a protected class based on "any information [she] presented during her interview, her appearance, their background knowledge of [her], and/or the manner in which she speaks." ECF No. 19 at 13–14.  For the purposes of the present motion, the Court agrees with Alfonso that the federal reporting paperwork does not defeat her prima facie claim. As defendant does not challenge her prima facie case on other grounds, the Court assumes, for the purposes of the present motion, that Alfonso has established a prima facie case of national origin discrimination at all eight schools.

### 2.   Legitimate, Non-Discriminatory Reasons and Pretext.

In moving for summary judgment on plaintiff's national origin claims, the District relies on the same explanations for not hiring Alfonso as discussed in the previous section. Additionally, plaintiff's pretext arguments are the same for both age and national origin discrimination.  Accordingly, the Court incorporates its analysis of the six schools where plaintiff alleges both age and national origin discrimination and finds that Alfonso does not establish a genuine dispute of material fact over whether the defendant's reasons for not hiring her at five of the six schools are pretext for *any* sort of discriminatory animus.  Therefore, the Court grants summary judgment as to Alfonso's Title VII claims at Fountain, Beulah, Pitts, Heroes, and Columbian.  However, as discussed above, the Court does find that plaintiff puts forth sufficient evidence of pretext at Morton to survive summary judgment.

Defendant also proffers legitimate, non-discriminatory reasons for not hiring Alfonso at Minnequa and Centennial.  *See* ECF No. 18 at 11, 14–15.  Therefore, the burden shifts back to Alfonso, and Alfonso claims that a reasonable jury could conclude that the District's reasons for not hiring her at Minnequa and Cenntennial are pretext for discriminatory animus.  ECF No. 19

at 18–19.  The Court finds that Alfonso has not put forth sufficient evidence of pretext to survive summary judgment.

    a.  <u>Minnequa Elementary School.</u>

The District claims that the Minnequa hiring committee did not select Alfonso because "she offered no specific ideas in her interview as to how she would integrate curriculum into music classes especially using musical instruments that had been previously taught at the school." ECF No. 18 at 11.  Additionally, defendant argues that "Plaintiff expressed some negativity that the hiring committee felt would not help achieve their goal of contributing to a healthy school culture." *Id.*; Patterson Depo., ECF No. 19-24 at 17:25–18:2.  The committee selected 49-year-old Theresa Montera who is white and "was perceived by the committee as very positive with a growth mindset and willing to bring new ideas to the music program." *Id.*

Plaintiff asserts that defendant's reasons for not hiring her—that she was negative about the District and Senate Bill 191, and that she did not specify how she would introduce curriculum into music—"are genuinely in dispute." ECF No. 19 at 18.  Alfonso argues that the "hiring committee was looking for someone who was open-minded and open to change, would be a good asset regarding culture, and looking for someone who would be able to teach the basic instruments introduced at the elementary level as well as guitar and basic recorders." *Id.* at ¶ 26 (citing Patterson Depo., ECF No. 19-24 at 12:21–14:7).  She claims that defendant's explanations are "also implausible, especially given that it would not serve her any good to speak negatively about her current situation or the Defendant while trying to secure a position with them." *Id.* at 18.  In her affidavit, Alfonso denies that she mentioned her "situation as a displaced teacher," and claims that she never indicated "any negativity towards the Defendant or Senate Bill 191." Alfonso Affid., ECF No. 19-12 at ¶ 11.  Additionally, she states that she *did*

address the implementation of curriculum into music, and that she "indicated [she] was familiar with the instruments being taught at the school[.]" *Id.* at ¶ 10. Finally, Alfonso concedes that the committee selected Montera partially for her experience, but she argues that Montera "did not know how to play the guitar and had less teaching experience[.]" ECF No. 19 at ¶ 27. In contrast, Alfonso claims that she "had experience teaching guitar, something the school was looking for." *Id.* at ¶ 28.

The Court finds that Alfonso's evidence does not raise a genuine dispute over whether the District's proffered reasons are pretext. First, the claims that Montera had less teaching experience and did not know how to play the guitar do not establish pretext because they do not constitute an overwhelming difference in qualifications. Second, according to the District, Montera demonstrated many of the qualities for which they were looking, and Alfonso did not perform as well in her interview. Plaintiff offers no evidence that demonstrates that the hiring committee's rationale was anything but a good-faith effort to select the best candidate based on the committee's assessment of how the candidates performed in their respective interviews. Third, as discussed above, Alfonso's reliance on her affidavit without other supporting evidence is insufficient. Finally, while plaintiff is correct to note that it would not be strategic for her to have made negative comments about the District or SB 191 during her interview, such a reflection has no bearing on whether she did or did not display any such negativity. In sum, the Court finds that no reasonable jury could conclude that the District's explanation for not hiring Alfonso at Minnequa is pretext for discrimination.

b. <u>Centennial High School.</u>

Plaintiff applied for an "instrumental/band position" at Centennial in July 2013. ECF No. 18 at 15. The District explains that Alfonso "was not offered the position because the school-

based hiring committee was concerned about her ability to fill a high school position as an

Instrumental Music Teacher[.]" *Id.*  Defendant asserts that Alfonso "had been a middle school

vocal music teacher for most of her career and had expressed the desire to stay in that area."[3]  *Id.*

The committee hired 54-year-old Mark Emery who is white and had "significant high school

experience," so the "committee believed he could better address the significantly different needs

of a high school band program."  *Id.*

Alfonso argues that the District's reason for not hiring her for the Centennial position is

"weak and pretext for discrimination."  ECF No. 19 at 19.  She states that defendant concedes

that she was qualified for the instrumental position because the only factor of the prima facie

case it disputes is whether she is a member of a protected class.  *Id.* (citing ECF No. 18 at 14).

Alfonso also claims that while she "had never held a position that only taught instrumental

music, she had taught instrumental and vocal music for (10) years" at Corwin Middle School.

ECF No. 19 at 19; Alfonso Affid., ECF No. 19-12 at ¶ 14.  Additionally, plaintiff argues that she

"clearly indicated during the interview that she was willing to learn whatever skills necessary to

teach at the high school level."  Alfonso Affid., ECF No. 19-12 at ¶ 14.  Finally, Alfonso claims

that the candidate selected—Mark Emery—"was not able to work as a full-time teacher because

he was a retired teacher who could only work a 110-day contract."  ECF No. 19 at 19.

The Court concludes that no rational juror could find that the District's explanation for

not hiring Alfonso is pretext.  While Alfonso claims to have expressed a commitment to learning

the skills necessary to teach at the high school level, the hiring committee was concerned that she

had never taught at the high school level.  The fact that Alfonso had experience teaching both

---

[3] As the Court mentioned above, Alfonso's resume indicates that she had worked for more total years as
an elementary school teacher despite her longest tenure at any one school being at a middle school.  *See*
Alfonso Resume, ECF No. 19-2 at 1–2.  However, the hiring committee's concern was Alfonso's lack of
high school experience, so defendant's mischaracterization of the amount of her middle school experience
is unimportant in context.

instrumental and vocal music at Corwin does not account for her lack of experience teaching high school students.  Furthermore, her argument that the District conceded that she was qualified for the job when it did not dispute this prong of the prima facie case is unavailing.  The District seems to accept that Alfonso had the minimum requirements necessary to apply for the Centennial position, but it does not follow that the hiring committee's later decision that another applicant was more qualified is a cover up of discrimination.  Finally, Alfonso's assertion that Emery could only work 110 days a year does not indicate pretext because it does not cast substantial doubt on the District's legitimate, non-discriminatory reason.

In sum, the Court finds that Alfonso has not met her burden of producing evidence to show a genuine dispute as to whether defendant's reasons for not hiring her at Minnequa or Centennial are pretext.  The Court grants summary judgment as to these national origin discrimination claims.

## ORDER

For the reasons described above, defendant's motion for summary judgment [ECF No. 18] is GRANTED in part and DENIED in part.  The Court grants summary judgment as to plaintiff's age and national origin discrimination claims at Fountain International Magnet School; Beulah Heights Elementary School; Pitts Middle School (now called Pueblo Academy of Arts); Minnequa Elementary School; Columbian Elementary School; Centennial High School; and Somerlid/Heroes K-8 Academy.  The Court denies summary judgment as to plaintiff's age and national origin discrimination claims at Morton Elementary School.

DATED this 4th day of May, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge